UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DORIE IDSINGA,

    Plaintiff,                                        Hon. Gordon J. Quist

v.                                                       Case No. 1:13-CV-1002

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years of age on her alleged disability onset date. (Tr. 173). She successfully completed high school and worked previously as a bank teller, customer order clerk, and social secretary. (Tr. 28). Plaintiff applied for benefits on July 21, 2010, alleging that she had been disabled since July 21, 2009, due to emphysema, depression, arthritis, and anxiety. (Tr. 18, 173-74, 218). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 117-72). On January 27, 2012, Plaintiff appeared before ALJ Nicholas Ohanesian with testimony being offered by Plaintiff, Plaintiff's husband, and a vocational expert. (Tr. 34-115). In a written decision dated May 9, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 18-29). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease; (2) chronic obstructive pulmonary disease (COPD); (3) affective (bipolar) disorder; (4) anxiety; and (5) bladder dysfunction, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 20-23). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform work subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday with normal breaks, she can stand/walk for 6 hours and sit for 6 hours; (3) she can frequently climb ramps, stairs, ladders, ropes, and scaffolds; (4) she can frequently balance, kneel, crouch, and crawl; (5) she can occasionally stoop; (6) she must avoid concentrated exposure to extreme cold, heat, humidity, and irritants such as fumes, odors, dust, gases, and poorly ventilated areas; and (7) she can perform simple, routine, and repetitive tasks. (Tr. 23).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 4,900 jobs in the state of Michigan, and approximately 142,000 nationally, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 90-99). This represents a significant number of

jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).  Accordingly, the ALJ denied Plaintiff's claim for benefits.

**I.**        **The ALJ Properly Assessed the Medical Opinion Evidence**

Two of Plaintiff's care providers, Dr. Jaime Halverson and Mary Gilbert, Ph.D., offered opinions as to Plaintiff's non-exertional limitations.  (Tr. 398-400, 426-28).  With respect to Plaintiff's physical limitations, Dr. Halverson concurred with the conclusions articulated by an occupational therapist.  (Tr. 431-39).  The ALJ afforded "no significant weight" to Dr. Halverson's opinions and "no weight" to Dr. Gilbert's opinions.  (Tr. 26-27).  Plaintiff asserts that she is entitled to relief because the ALJ improperly discounted the opinions from her treating physicians.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at \*2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232,

235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not

required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

        A.        Dr. Halverson's Opinions Regarding Plaintiff's Non-Exertional Limitations

On December 5, 2011, Dr. Jaime Halverson completed a report regarding Plaintiff's nonexertional limitations. (Tr. 398-400). The doctor assessed Plaintiff's abilities in four broad categories: (1) making occupational adjustments; (2) making performance adjustments; (3) making personal/social adjustments; and (4) functional limitations. (Tr. 398-400).

With respect to Plaintiff's ability to make occupational adjustments, the doctor reported that Plaintiff experienced extreme[2] limitation with respect to her ability to deal with work stresses. (Tr. 398). The doctor reported that Plaintiff experienced marked[3] limitation with respect to her ability to use judgment and maintain attention and/or concentration. (Tr. 398). With respect to Plaintiff's ability to relate to coworkers and deal with the public, the doctor reported that Plaintiff experienced only moderate[4] limitation. (Tr. 398). With respect to Plaintiff's ability to follow work rules and interact with supervisors, the doctor reported that Plaintiff experienced mild[5] limitation or no limitation.

---

[2] The form in question defined "extreme" as "a degree of limitation that is incompatible with the ability to do gainful activity." (Tr. 398).

[3] The form in question defined "marked" as "limitations that are serious but do not completely interfere with the ability to function independently, appropriately and effectively on a sustained basis." (Tr. 398).

[4] The form in question defined "moderate" as "limitations that result in satisfactory but limited function." (Tr. 398).

[5] The form in question defined "mild" as "limitations that do not significantly limit a person's ability to perform most jobs." (Tr. 398).

8

With respect to Plaintiff's ability to make performance adjustments, the doctor reported that Plaintiff experienced no limitation in her ability to understand, remember, and carry out simple job instructions. (Tr. 399). With respect to Plaintiff's ability to make personal/social adjustments, the doctor reported that Plaintiff experienced marked limitation with respect to her ability to behave in an emotionally stable manner. (Tr. 399). The doctor reported that Plaintiff experienced moderate limitation in the following areas: (1) maintain personal appearance; (2) relate predictably in social situations; (3) demonstrate reliability. (Tr. 399).

As for functional limitations, the doctor reported that Plaintiff experienced: (1) moderate limitation with respect to her ability to maintain concentration, persistence, and pace; (2) mild limitation in maintaining social functioning; and (3) no limitation with respect to performing activities of daily living. (Tr. 399). The doctor also reported that Plaintiff experienced "four or more" episodes of decompensation "each of extended duration." (Tr. 399).

B.   Dr. Gilbert's Opinions Regarding Plaintiff's Non-Exertional Limitations

On December 15, 2011, Mary Gilbert, Ph.D. completed an identical report concerning Plaintiff's nonexertional limitations. (Tr. 426-28). Dr. Gilbert determined that Plaintiff was far more limited than Dr. Halverson concluded. With respect to Plaintiff's ability to make occupational adjustments, Dr. Gilbert reported that Plaintiff experienced extreme limitation with respect to her ability to deal with work stresses and experienced marked limitation in the following areas: follow work rules, relate to co-workers, deal with the public, interact with supervisors, use judgment, function independently, and maintain attention/concentration. (Tr. 426).

With respect to Plaintiff's ability to make performance adjustments, the doctor reported that Plaintiff experienced moderate limitation with respect to her ability to understand, remember, and carry out simple job instructions. (Tr. 426-27). With respect to Plaintiff's ability to make personal/social adjustments, the doctor reported that Plaintiff experienced extreme limitation with respect to her ability to behave in an emotionally stable manner. (Tr. 427). The doctor reported that Plaintiff experienced marked limitation with respect to her ability to relate predictably in social situations and demonstrate reliability. (Tr. 427). The doctor reported that Plaintiff experienced moderate limitations with respect to her ability to maintain personal appearance. (Tr. 427).

As for functional limitations, the doctor reported that Plaintiff experienced: (1) mild limitation with respect to her ability to perform activities of daily living; (2) marked difficulties maintaining concentration, persistence, and pace; and (3) marked difficulties maintaining social functioning. (Tr. 427). The doctor also reported that Plaintiff experienced "four or more" episodes of decompensation "each of extended duration." (Tr. 427).

The ALJ discounted Dr. Halverson's and Dr. Gilbert's opinions regarding Plaintiff's non-exertional limitations, noting that such were inconsistent with the doctors' contemporaneous treatment notes and, furthermore, were contradicted by the evidence of record. (Tr. 26-27). This conclusion is supported by substantial evidence. An August 2010 examination revealed that Plaintiff was experiencing "mild" depression. (Tr. 320-23). Plaintiff's GAF score was rated as 62[6]

---

[6] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A score of 62 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

and her prognosis was characterized as "good with continued mental health treatment." (Tr. 323). Subsequent treatment notes reveal that Plaintiff responded quite favorably when taking her prescribed medication. On August 12, 2010, Plaintiff reported that her medication was "helping." (Tr. 337). Treatment notes dated April 21, 2011, indicate that Plaintiff's depression was "stable" and that she was feeling "much better." (Tr. 388). On August 19, 2011, Plaintiff reported that "since starting on the medication, she has been feeling a lot better and able to cope better." (Tr. 401). Plaintiff's reported activities are also inconsistent with the conclusion that she suffers from such extreme emotional impairments and limitations. (Tr. 197-206, 277-84).

C.  Dr. Halverson's Opinions Regarding Plaintiff's Physical Limitations

On December 15, 2011, Occupational Therapist, Barbara Rounds, completed a report regarding Plaintiff functional capacity. (Tr. 431-38). Rounds concluded that Plaintiff can frequently[7] sit, but can only occasionally[8] stand, walk, bend, and squat. (Tr. 437). Rounds reported that Plaintiff can occasionally lift 25 pounds and frequently lift 10 pounds. (Tr. 437). Rounds also reported that if Plaintiff worked a 40 hour work week in a competitive work environment, she would experience "serious limitations as to pace and concentration" and "would likely miss 3 days or more of work and be tardy 3 or more days per month." (Tr. 438). Rounds concluded that Plaintiff "is best suited for part-time work, as opposed to full-time work, which would not accommodate [Plaintiff's] limitations." (Tr. 438). On January 6, 2012, Dr. Halverson reported that he concurred with Rounds' functional capacity assessment. (Tr. 439).

---

[7] The form Rounds completed defined "frequent" as 1/3 -2/3 of a work shift or 2.5 -5.5 hours cumulative. (Tr. 437).

[8] The form Rounds completed defined "occasional" as 0 - 1/3 of a work shift or up to 2.5 cumulative. (Tr. 437).

11

The ALJ discounted this particular assessment on the ground that it was not supported by the medical record. This determination is supported by substantial evidence. As the ALJ concluded, the record does not contain medical evidence supporting the opinion in question. X-rays of Plaintiff's cervical spine revealed only "mild" disc space narrowing which was characterized as "likely degenerative." (Tr. 315). A pulmonary function test revealed that Plaintiff was experiencing "minimal obstructive airway disease." (Tr. 302). The doctor's opinion as to Plaintiff's inability to stand throughout the work day is simply not supported by the objective medical evidence or the contemporaneous treatment notes of Plaintiff's care providers. Plaintiff's reported activities are likewise inconsistent with the opinions in question. (Tr. 197-206, 277-84). In sum, the ALJ's decision to afford less than controlling weight to the opinions in question is supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: March 26, 2015              /s/ Ellen S. Carmody
                                  ELLEN S. CARMODY
                                  United States Magistrate Judge